

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00238-CR

_____

WILLIAM BARRY TRAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Cherokee County, Texas
Trial Court No. 48393

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

The small white pickup truck driven by William Barry Travis in Cherokee County[1] was not seen violating any traffic law or exhibiting any signs that the driver was intoxicated or otherwise in distress, when Officer Matthew Poole saw, followed, and ultimately stopped it. Poole was acting on an earlier telephoned report that Travis had been intoxicated when he assaulted his brother and left the scene driving a small, white pickup truck. As a result of the stop, Poole discovered evidence suggesting that, in fact, Travis was intoxicated.

Travis argued to the trial court that the stop was improper and that, therefore, the evidence should be suppressed. After the trial court overruled Travis' motion to suppress the evidence, Travis was convicted of DWI and sentenced to 180 days' confinement and a $2,000.00 fine. On appeal, Travis continues his argument. Because we agree, we reverse the judgment and remand this case to the trial court for further proceedings consistent with this opinion.

Poole received a call from Travis' brother "claiming that he had assaulted him . . . [and] that [Travis] had left the scene and was intoxicated." Travis' brother did not want to press charges, and no warrant was obtained. Poole was patrolling one or two hours later when he heard

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

that "an elderly subject,[2] [was] possibly passed out behind the wheel of" a "small white pickup." Poole was dispatched to Farm-to-Market 344 and 346 "as a welfare concern." Because Travis' brother said Travis left in "his white, Chevrolet S-10 pickup," Poole thought the welfare concern could be a "10-56," that is, a possible intoxication case.

While he was in route to his dispatch destination, Poole was passed by a white Chevrolet S-10 pickup. He turned around "and pursued it, to see—you know, to investigate further whether it would be the vehicle I was looking for." Poole did not see any sign of distress from the driver and did not believe him to be a danger to himself or others. Travis violated no speeding or other traffic law. Poole testified he had no articulable facts to lead him to stop the car based on a reasonable suspicion of DWI. Nevertheless, Poole continued to follow Travis and ran a records check on the vehicle registration. Poole concluded "that this was going to be the person related to the disturbance earlier in the day," and believed "it was apparent that this was going to be probably the vehicle that I was in route to check on." Thus, he signaled for Travis to pull over.

Travis sought to suppress Poole's testimony that Travis smelled of alcohol, had glassy, bloodshot eyes, was harboring a Natural Light on his vehicle floorboard, and admitted to drinking four or more beers.[3] The trial court found that Poole did not have reasonable suspicion to stop

---

[2]The record lists Travis' birthdate as August 12, 1951, making him fifty-six years old at the time of the offense. While admittedly age categorizations can depend on one's perspective, we doubt the reference to an "elderly subject" referred to Travis.

[3]Travis contends that the evidence would be legally and factually insufficient for a jury to render a verdict of guilt if this evidence was suppressed. However, in reviewing legal and factual sufficiency, we consider all of the evidence, whether improperly admitted or not. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). From the record, it is clear that a rational jury, as a finder of fact, could

3

Travis for DWI, and this finding is not disputed by any party.[4]  The issue on appeal is whether the trial court erred in impliedly finding that the community caretaker exception applied to justify the traffic stop.[5]  We hold that the caretaker exception did not apply.

In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to the trial court's determination of historical facts and review de novo any questions of law concerning the search and seizure.  *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  We will sustain the admission of the evidence if admission is reasonably supported by the record and correct on any theory of law applicable to the case.  *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV.  This prohibition extends to "brief investigatory stops such as the stop of [a] vehicle." *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002).  Such a stop must be objectively reasonable in light of the particular circumstances of the case.  *Maryland v. Wilson*, 519 U.S. 408, 411 (1997); *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *Corbin*, 85 S.W.3d at 276.  Reasonableness depends on "a balance between

have found beyond a reasonable doubt the essential elements of DWI and that the verdict was not manifestly unjust, shocking to the conscience, or demonstrative of bias.  *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006).

[4]As finder of fact, the trial court was free to disbelieve Poole's testimony of statements made by Travis' brother.

[5]There is no ruling on the record regarding the community caretaker exception.  However, because evidence subject to the motion to suppress was admitted in front of the jury, we conclude that the trial court impliedly ruled the community caretaker exception applied.

4

the public interest and the individual's right to personal security free from arbitrary interference by law enforcement." *Corbin*, 85 S.W.3d at 276 (quoting *Wilson*, 519 U.S. at 411). A seizure based on reasonable suspicion will generally be reasonable; however, the trial court explicitly ruled that Poole did not have reasonable suspicion to stop Travis.[6] *Id*.

In certain circumstances, a police officer may reasonably seize an individual through the exercise of the community caretaking function even without reasonable suspicion or probable cause that an offense has been committed. *Id.* (citing *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999); *see Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). As part of an officer's duty to "serve and protect," an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help." *Id.* (citing *Wright*, 7 S.W.3d at 151); *Bilyeu v. State*, 136 S.W.3d 691, 698 (Tex. App.—Texarkana 2004, no pet.). This exception to the warrant requirement has "narrow applicability." *Laney*, 117 S.W.3d at 859.

The community caretaking exception cannot be used if the officer is primarily motivated by a different purpose, such as law enforcement. *Corbin*, 85 S.W.3d at 276. The record reflects that Poole stopped Travis "to check the welfare of the driver" based on a possible "medical or intoxication" problem. The trial court, as the exclusive judge of credibility and the fact-finder, could have concluded Poole was primarily motivated by community caretaking concerns. *Id.* at

---

[6]Poole explained that he did not have any articulable facts that would lead to a reasonable suspicion that Travis was DWI, that he did not pull Travis over in suspicion of DWI, and that no traffic laws were violated.

277. Given that determination, we examine whether Poole's belief that Travis needed help is reasonable by looking at four factors:

> (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others.

*Id.* (quoting *Wright*, 7 S.W.3d at 151–52).

Since "the purpose of the community caretaking exception is to allow an officer to "seize" and assist an individual whom he reasonably believes is in need of help, the first factor is entitled to the greatest weight." *Id.* In this case, this factor undeniably weighs against admission since Poole testified Travis did not appear to be in distress. *See id.* at 277–78. Although there is record evidence that Travis was driving on a county road suggesting isolation, he may have been close to an intersection. It is the State's burden to demonstrate the reasonableness of the stop. *State v. Dixon*, 151 S.W.3d 271, 273 (Tex. App.—Texarkana 2004), *aff'd*, 206 S.W.3d 587 (Tex. Crim. App. 2006). We find this factor to be neutral. *See Corbin*, 85 S.W.3d at 278. Poole testified Travis was alone, indicating that he did not have access to assistance. However, because Travis was not distressed, there is not much weight to this factor. In regard to the fourth factor, Poole testified he had no reason to believe Travis was a danger to himself or others. Nevertheless, Poole stopped Travis "to check his current state, his welfare, to make sure he is okay." While the trial court was free to consider Poole's subjective concern, we find Poole's belief that Travis required aid objectively unreasonable. Therefore, the narrow community caretaker exception did

6

not justify Poole's stop. Thus, Travis' Fourth Amendment rights were violated.

Having found constitutional error, we must conduct a harm analysis to determine whether it calls for reversal of the judgment. TEX. R. APP. P. 44.2. To determine whether prejudice occurred by the introduction of improperly admitted evidence at trial, we evaluate the entire record in a neutral manner, and must reverse unless we determine "beyond a reasonable doubt that error did not contribute to the conviction or punishment." *Id.* Here, the only evidence that Poole was DWI came from Poole's testimony of events occurring after the traffic stop. Without the evidence which should have been suppressed, nothing in the record would prove Travis drove while legally intoxicated. After carefully reviewing the record and performing the required harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure, we are unable to determine beyond a reasonable doubt that the trial court's denial of Travis' motion to suppress did not contribute to his conviction or punishment. Accordingly, we sustain Travis' first point of error.

We reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.


Josh R. Morriss, III
Chief Justice


Date Submitted:     July 19, 2010
Date Decided:      August 5, 2010

Publish

7