

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00415-CR

_____

JOSEPH TAYLOR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2011-431,936, Honorable Jim B. Darnell, Presiding

August 28, 2013

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Joseph Taylor, pled guilty to possession of marijuana in an amount of 50 pounds or less but more than 5 pounds.[1] Pursuant to a plea agreement, he was sentenced to five years confinement and placed on community supervision for five years. On appeal, he asserts the trial court erred by denying his motion to suppress

---

[1]See TEX. HEALTH & SAFETY CODE ANN. § 481.121(a) (West 2010). An offense under this section is punishable as a third degree felony. See Id. at (b)(4).

because (1) the order authorizing the installation of a Global Positioning System (GPS) tracking device on the vehicle Appellant was driving at the time of his arrest was not supported by adequate probable cause; (2) the authorization to use the tracking device was in contravention of state and federal law; and (3) Appellant was illegally stopped and detained.  We affirm.

**Background**

In August 2011, an indictment issued alleging that Appellant intentionally or knowingly possessed a usable quantity of marijuana, in an amount of 50 pounds or less but more than 5 pounds, on or about July 8, 2011.  Subsequent to the indictment, Appellant filed a motion to suppress evidence obtained as a result of the allegedly unlawful traffic stop, search, and seizure of evidence from the vehicle he was driving, which seizure ultimately resulted in those charges being filed.

At the suppression hearing, Detective Michael Chavez of the Lubbock Police Department testified he received information from a confidential informant who was knowledgeable about a local drug operation that a member of the operation was going to leave Lubbock, pick up a large quantity of narcotics in Albuquerque, New Mexico, and return to Lubbock on July 7, 2011.  After learning of the upcoming delivery, Chavez drafted an *Application for Order Authorizing Installation and Utilization of a Mobile Tracking Device* pursuant to section 14 of article 18.21 of the Texas Code of Criminal Procedure*.*

Chavez's *Application* sought the installation and use of a GPS unit on a 1998 Toyota Tacoma owned by Taylor Joe Kelly, bearing Colorado Registration 587RZ1, that

2

was currently located in Lubbock, Lubbock County, Texas. The application was presented to a Lubbock County district judge, in writing and under oath. In that application, Chavez represented he had reasonable suspicion to believe that criminal activity would be, had been, or was in progress and that the use of the GPS unit was reasonably likely to yield information relevant to his investigation of criminal activity. In support of the application, he averred as follows:

> Affiant is currently assigned to the Lubbock Police Department Special Operations Division as an investigator. A confidential informant who has proven credible and reliable advised that a marijuana dealer makes a trip to Albuquerque, NM to pick up a large quantity of marijuana. I have previously made undercover purchases from this marijuana dealer. Through my investigation of this suspect I have obtained the knowledge of three additional suspects involved in delivering and transporting marijuana from the same source in Albuquerque, NM. I have made four undercover purchases of marijuana from two of the suspects in the marijuana operation. I have received knowledge from a confidential source that Taylor Joe Kelly is a vital participant in the marijuana organization of this group. I have received information from this same confidential source that one of the participants in this marijuana operation will make a trip to Albuquerque, NM to obtain a large quantity of marijuana within the next 72 hours. I have received information from the confidential source that upon return to Lubbock, TX Mr. Kelly will take custody and transport a large portion of this marijuana to the Austin area. The affiant has observed through surveillance Mr. Kelly have contact with the two suspects the affiant has conducted under cover purchases with on previous occasions. Affiant did observe Mr. Kelly drive the suspect vehicle. Mr. Kelly is the registered owner of the listed vehicle.

Based on this affidavit, on July 7, 2011, a district judge authorized placement of the GPS unit in or on the described vehicle. After notifying the judge of its placement, Chavez activated the unit. The vehicle left Lubbock and drove to Albuquerque as predicted by the informant. Chavez enlisted Officer Scott Weems to intercept the vehicle on its return and arrest the driver.

Upon its early morning arrival in Lubbock on July 8, Chavez informed Officer Weems of its location and Weems then intercepted the vehicle on the Clovis Highway. Based on information received from Chavez, Officer Weems believed he had reasonable suspicion to believe the vehicle contained drugs purchased in New Mexico. After he pulled behind the vehicle, he observed a bulb emitting a white light from the taillight due to a partially broken lens. He also noticed the vehicle's license plates had expired a year earlier and there was no valid Texas inspection. Based on his observations, he initiated a traffic stop. He walked to the driver's side and asked Appellant for his license and insurance. He noticed that Appellant appeared "very tired" and his eyes were "bloodshot." When asked where he was coming from, Appellant responded he was coming from Durango, Colorado and had driven straight through. Officer Weems knew he was not telling the truth because the information Chavez obtained from the GPS unit indicated Appellant was returning from Albuquerque. Although Appellant indicated he was going to a friend's house in Lubbock, he could not recall the address.

Officer Weems then asked Appellant whether there were any weapons or anything illegal in the vehicle. Appellant became nervous and responded there were no weapons. After several attempts, Appellant finally responded there was nothing illegal in the vehicle. Officer Weems then asked him to step out of the vehicle and asked whether he would verbally consent to a search of the vehicle. Appellant refused. Officer Weems then requested his backup officer, Officer Jeremy Jones of the K-9 Unit, to perform an open air sniff of the vehicle with his dog. When Officer Jones went to retrieve his dog, Appellant became even more nervous and began walking towards the

4

driver's side of the vehicle. Officer Weems told him to return. The dog subsequently alerted to the backseat area of the vehicle. After placing Appellant in his patrol unit, Officer Weems discovered a large duffle bag containing several heat-sealed packages of marijuana beneath the vehicle's backseat. He also found $2,350 in cash in the vehicle and an additional $128 in Appellant's wallet. Appellant was placed under arrest for possession of marijuana.

An evidentiary hearing on Appellant's motion to suppress was held on March 9, 2012. At the conclusion of that hearing, the trial court denied the motion. Thereafter, on July 26, 2012, Appellant pled guilty pursuant to a plea bargain. He was sentenced to five years confinement, suspended in favor of community supervision for a term of five years. This appeal followed.

**Mobile Tracking Devices**

Article 18.21 of the Texas Code of Criminal Procedure empowers a district judge to issue an order authorizing the surreptitious installation and use of a mobile tracking device for the purpose of tracking the movement of a vehicle. TEX. CODE CRIM. PROC. ANN. art. 18.21, § 14(a)(1) (West Supp. 2012). The order must be issued in the same judicial district as the site of (1) the investigation, or (2) the person, vehicle, container, item, or object the movement of which is to be tracked by the device. *Id.* at § 14(a)(1) & (2). "The order may authorize the use of a mobile tracking device outside the judicial district *but within the state*, if the device is installed within the district." *Id.* at § 14(b) (emphasis added).

An order authorizing the use of a mobile tracking device may be issued only on the application of an authorized peace officer. *Id.* at § 14(c). That application must be written, signed, and sworn to before a district judge and it must contain a statement of facts and circumstances that provide the applicant with "reasonable suspicion" to believe that (1) criminal activity has been, is, or will be committed; and (2) the installation and use of the device is likely to produce information that is material to an ongoing criminal investigation of criminal activity. *Id.* at § 14(c)(5). Within 72 hours after the time the mobile tracking device is activated, the applicant shall notify the judge in writing of the activation. *Id.* at § 14(d).

**Standard of Review – Motions to Suppress**

We use an abuse of discretion standard to review the trial court's ruling on a motion to suppress evidence. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App. 2002); *Hudson v. State,* 247 S.W.3d 780, 783 (Tex.App.—Amarillo 2008, no pet.). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex.Crim.App. 2007). In reviewing a trial court's decision on a motion to suppress, we do not engage in our own factual review; *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007), but view the evidence in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). We also review *de novo* the court's application of the law of search and seizure to the facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000). As no findings of fact or conclusions of law were filed here, we will assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the

6

record. *Id.* at 855. If the trial court's decision is correct on any theory of law applicable to the case, we must affirm that decision. *Id.* at 855-56.

### Issue No. 1—GPS Monitoring

By his first issue, Appellant contends the trial court erred by denying his motion to suppress because the State relied on the standard of proof of "reasonable suspicion" to obtain court approval to place the mobile tracking device on the vehicle Appellant was driving at the time of his arrest, whereas the court should have required the higher standard of "probable cause" mandated by articles 18.01 and 18.02 of the Texas Code of Criminal Procedure for the issuance of a search warrant. We disagree.

After the GPS monitoring in this case was concluded, on January 23, 2012, the United States Supreme Court decided *United States v. Jones*, ___ U.S. ___, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) resolving a split amongst federal circuit courts of appeals over whether the *warrantless* installation and use of a GPS tracking device on a suspect's vehicle constitutes a "search" under the Fourth Amendment. In *Jones*, the Supreme Court held "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Jones*, 132 S.Ct. at 949, 181 L.Ed.2d at 918. Justice Scalia based his opinion on a property-based or trespass theory, i.e., by placing the GPS unit on the vehicle, "[t]he Government physically occupied private property for the purpose of obtaining information." *Jones,* 132 S.Ct. at 949-50, 181 L.Ed.2d at 918.[2] Based on

---

[2]Five members of the Court concluded that Justice Scalia's trespass theory did not form a sufficiently comprehensive analysis of the Fourth Amendment implications of GPS monitoring and argued that GPS monitoring should also (in the case of Justice Sotomayor), or only (in the case of Justice Alito), be analyzed for the purpose of determining whether it has invaded a reasonable expectation of privacy. *Jones,* 132 S.Ct. at 956, 958, 181 L.Ed.2d at 925, 927-28.

*Jones*, Appellant asserts the GPS unit's placement and use violated the Fourth Amendment because Chavez's *Application* failed to establish sufficient probable cause for the issuance of a warrant.[3]  *See* TEX. CODE CRIM. PROC. ANN. arts. 18.01 and 18.02 (West 2005 and West Supp. 2012).

At the time Chavez placed the GPS unit on the vehicle in July 2011, several United States Courts of Appeal, including the Fifth Circuit, had approved warrantless installation and monitoring of GPS units on vehicles that remained on public roads, relying on, in part, the United States Supreme Court's holdings in *United States v. Knotts*, 460 U.S. 276, 281-82, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), and *United States v. Karo*, 468 U.S. 705, 712, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984).[4]  *See United States v. Hernandez*, 647 F.3d 216, 220-21 (5th Cir. 2011) (use of GPS technology to monitor a vehicle's movements not a search governed by the Fourth Amendment).  *See also United States v. Garcia,* 474 F.3d 994, 996-97 (7th Cir. 2007), *cert. denied,* 552 U.S. 883, 128 S.Ct. 291, 169 L.Ed.2d 140 (2007) (installation and use of GPS tracker not a search or seizure under Fourth Amendment); *United States v. Marquez*, 605 F.3d 604, 610 (8th Cir. 2010) ("when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable

---

[3]Appellant does not dispute whether Chavez's *Application* satisfied the reasonable suspicion requirement for issuance of a district court order approving the GPS unit's installation and use.  *See* TEX. CODE CRIM. PROC. ANN. art. 18.21, § 14 (West Supp. 2012).

[4]In *Knotts*, the Supreme Court held that an officer's use of an electronic beeper, that had been hidden inside a chemical container prior to coming into the defendant's possession, to track the defendant's movements as he traveled on public roads with the container in his car, did not violate the Fourth Amendment, as persons traveling in a vehicle on public roads had no reasonable expectation of privacy in their movements.  *Knotts*, 460 U.S. at 281-82.  One year later, the *Karo* court held that the consensual installation of an electronic beeper in a can, prior to the can entering into the defendant's possession, was not a search, because the installation itself conveyed no information at all.  *Karo,* 468 U.S. at 712.

period of time"); *United States v. Pineda-Moreno*, 591 F.3d 1212, 1214-15 (9th Cir. 2010) (installation and use of GPS tracker not a search or seizure under Fourth Amendment); *United States v. Smith*, No. 09-16168, 2010 U.S. App. LEXIS 14894, at *6-7 (11th Cir. July 20, 2010) (*per curiam*) ("placement of an electronic tracking device on the exterior of the defendant's vehicle when it was parked on a public parking lot did not violate his Fourth Amendment rights").[5]

In *Hernandez,* the United States Court of Appeals for the Fifth Circuit affirmed its prior holding in *United States v. Michael*, 645 F.2d 252, 257-58 (5th Cir. 1981) (*en banc*) wherein the court found that law enforcement's use of GPS technology to monitor a vehicle's movements was not a search governed by the Fourth Amendment. *Hernandez*, 647 F.3d at 220-21. In *Michael*, the Fifth Circuit "relied on the lesser expectation of privacy that has historically been applied to motor vehicles, the relatively non-intrusive nature of the device's installation and use, and the fact that the agents had reasonable suspicion to believe the suspect was trafficking in illegal drugs." *Hernandez*, 647 F.3d at 220. "The [electronic device], in sum, only aided the agents in the performance of their lawful surveillance." *Id.*

Based on the state of the law as it existed at the time the mobile tracking device was installed on the vehicle being driven by Appellant, even assuming without deciding that a Fourth Amendment violation occurred and that suppression would otherwise be appropriate, the evidence in this case would not have been subject to the exclusionary

---

[5]A split among the federal circuit courts of appeal was created when the United States District of Columbia Circuit Court of Appeals held that the use of a GPS tracking device for 28 days violated a defendant's reasonable expectation of privacy. *United States v. Maynard*, 615 F.3d 544, 555-67 (D.C. Cir. 2010).

rule because the officers acted in reasonable reliance on federal precedent in the majority of the federal circuit courts of appeal, including the Fifth Circuit, that had considered the issue where the installation of the device otherwise complied with the "reasonable suspicion" standard in article 18.21, section 14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 1821, § 14 (West Supp. 2012). In a case similar to this case, the Fifth Circuit Court of Appeals recently stated as follows:

> "[S]earches conducted in objectively reasonable reliance on binding appellant precedent are not subject to the exclusionary rule." *Davis v. United States*, 131 S.Ct. 2419, 2423-24, 180 L.Ed.2d 285 (2011). In December 2009, it was objectively reasonable for agents operating within the Fifth Circuit to believe that warrantless GPS tracking was permissible under circuit precedent. In *United States v. Michael*, 645 F.2d 252, 257 (5th Cir. 1981) (en banc), this court held that "reasonable suspicion is adequate to support warrantless beeper installation" on a suspect's vehicle parked in a public place. . . . Despite any technological differences between a 1981 "beeper" and the GPS device used in this case, the functionality is sufficiently similar that the agents' reliance on *Michael* to install a GPS device on the truck, in light of the reasonable suspicion of drug trafficking, was objectively reasonable.

*United States v. Andres*, 703 F.3d 828, 834-35 (5th Cir. 2013), *cert. denied,* ___ U.S. ___, 2013 U.S. App. LEXIS 143 (2013). *See United States v. Patel*, No. 09-30490, 2012 U.S. App. LEXIS 16899, at *8-38 (5th Cir. Aug. 13, 2012).

Here, Chavez averred in his *Application* that he had a reasonable suspicion to believe that the vehicle in question would be used in drug trafficking and that drugs would be found in the vehicle on its return trip from New Mexico. The authorizing court agreed and authorized the GPS unit's placement and use in compliance with the Texas Code of Criminal Procedure and the existing appellate law in the majority of the federal

circuit courts of appeal that had considered the issue at that time.[6] The record does not suggest, and Appellant does not assert, that Chavez was not acting in good faith or that his conduct was unlawful. Nor does he argue that it would have been objectively unreasonable for Chavez to believe his conduct was lawful. Accordingly, because the evidence would not have been subject to the exclusionary rule, we find the trial court did not err in denying Appellant's motion to suppress. *See State v. Elias,* No. 08-08-00085-CR, 2012 Tex. App. LEXIS 8094, at *18-19 (Tex.App.—El Paso 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Davis,* 131 S.Ct. 2419, 180 L.Ed.2d 285) (evidence seized by law enforcement officers not subject to the exclusionary rule if officers conducted search in objective good faith reliance on then-binding appellate precedent). *See also United States v. Sykes*, No. 3:11-CR-43, 2013 U.S. Dist. LEXIS 38823, at *6-9 (E.D. Va. March 20, 2013) (*Jones* does not apply retroactively to cases on collateral review). Appellant's first issue is overruled.

**Issue No. 2—Article 18.21 Application**

By his second issue, Appellant asserts the district court judge did not have the legal authority to authorize the GPS unit's installation and use in this particular case because Chavez's *Application* indicated that he suspected the vehicle would be traveling out-of-state to New Mexico. Again, we disagree.

---

[6]We do not hold *Jones* requires something more than a reasonable suspicion before a court may *authorize the placement and use* of a GPS unit by law enforcement. Despite the clear holding in *Jones*, the *Jones* court did not address "whether the government must obtain a warrant to install and use a GPS tracking device, and if not, what quantum of suspicion is required (e.g., reasonable suspicion or probable cause)." *Patel*, 2012 U.S. App. LEXIS 16899, at *11-12. Accordingly, we specifically do not reach the question of whether the State must obtain a *warrant* pursuant to articles 18.01 and 18.02 of the Texas Code of Criminal Procedure in order to place a mobile tracking device on a suspected vehicle.

Chavez's *Application* does contemplate the vehicle would travel to and from Albuquerque, New Mexico. The judge's order, however, "directed [law enforcement] to monitor said mobile tracking device and to follow said vehicle to any location *within the State of Texas* in furtherance of [their] investigation." Thus, the judge did not exceed his authority under state law by his conditional approval of Chavez's *Application.* Accordingly, the trial court did not abuse its discretion by denying Appellant's motion to suppress on that basis.[7] Appellant's second issue is overruled.

**Issue No. 3—Traffic Stop and Detention**

Finally, Appellant asserts he was illegally stopped and detained because a cracked rear taillight lens emitting a visible white light is not a violation of the law in the absence of testimony that his taillight failed to emit a red light plainly visible at a distance of 1,000 feet. *See Vicknair v. State,* 751 S.W.2d 180, 188-89 (Tex.Crim.App. 1988). For the reasons stated below, we find Appellant was not illegally stopped or detained.

Appellant correctly points out that, at the suppression hearing, Officer Weems testified he stopped Appellant because the vehicle had a "busted" taillight, i.e., he could see white and red light emitting from the rear taillight's cracked lens. Appellant, however, does not dispute that Officer Weems stopped him because of *two* separate traffic violations: (1) the defective taillight, and (2) operation of a motor vehicle with an expired Colorado registration or license plate.

---

[7]Although Chavez's testimony at the suppression hearing indicated he also monitored the vehicle in New Mexico to corroborate his informant's information, the State represented at the hearing that any information gathered through the GPS unit while the vehicle was in New Mexico would not be used at trial.

A law enforcement officer may lawfully stop a motorist who commits a traffic violation. *See Delijevic v. State,* 323 S.W.3d 606, 608 (Tex.App.—Amarillo 2010, no pet.). It is a traffic violation in Texas to operate a motor vehicle that has not been registered as required by law. *See* TEX. TRANSP. CODE ANN. § 502.407 (West 2013). *See also Nunez v. State,* No. 08-09-00047-CR, 2011 Tex. App. LEXIS 1675, at *8 (Tex.App.—El Paso March 9, 2011, no pet.) (mem. op., not designated for publication). Here, Appellant was lawfully stopped and detained for investigation of an expired registration or license plate. *See Michalec v. State,* No. 03-11-00104-CR, 2013 Tex. App. LEXIS 6431, at *25 (Tex.App.—Austin May 24, 2013, no pet.) (mem. op., not designated for publication); *McDuff v. State,* No. 08-10-00104-CR, 2011 Tex. App. LEXIS 3534, at *5-9 (Tex.App.—El Paso May 22, 2011, pet. ref'd) (mem. op., not designated for publication).

When Officer Weems stopped Appellant, he also believed he had a reasonable suspicion that the vehicle contained drugs purchased in New Mexico. *See Hoag v. State,* 728 S.W.2d 375, 380 (Tex.Crim.App. 1987) (the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.") *See also Illinois v. Andreas,* 463 U.S. 765, 771 n.5, 103 S.Ct. 2219, 77 L.Ed.2d 1003 (1983) ("where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all").

Here, Officer Weems noticed Appellant appeared "very tired" and his eyes were "bloodshot." Appellant lied about his departure point and could not recall the address of

13

the friend he was traveling to visit. When Officer Weems asked Appellant if he had anything illegal in the vehicle, Appellant answered evasively and ultimately refused to consent to a search of the vehicle. Officer Weems immediately asked Officer Jones to retrieve his dog and conduct an open air sniff of the vehicle. *Haas v. State,* 172 S.W.3d 42, 51 (Tex.App.—Waco 2005, pet. ref'd) ("Even in the absence of reasonable suspicion, a sniff of the outside of a vehicle by a trained canine during a routine, valid traffic stop is not a search within the meaning of the Fourth Amendment. [Citations omitted].") Appellant's nervousness increased. Once the dog alerted to the vehicle, Officer Weems had probable cause to search the vehicle without a warrant; *id.* at 54, and once he discovered the marijuana beneath the backseat, he had probable cause to lawfully place Appellant under arrest. *See Graves v. State,* 307 S.W.3d 483, 491 (Tex.App.—Texarkana 2010, pet. ref'd) (a peace officer may make a warrantless arrest for any offense committed in his presence or within the officer's view). *See also* TEX. CODE CRIM. PROC. ANN. art. 14.01 (West 2005). Under the totality of the circumstances, we find Officer Weems traffic stop and detention of Appellant was reasonable. Accordingly, the trial court did not err by denying Appellant's motion. Appellant's third issue is overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Quinn, C.J., joins in the disposition of issue three and concurs in the result.

Publish.