

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00284-CR

Nicole Duffin **WINDHAM**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. CR12-066
The Honorable N. Keith Williams, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  February 26, 2014

AFFIRMED

Nicole Duffin Windham was charged with driving while intoxicated.  The trial court denied Windham's pre-trial motion to suppress her seizure by police.  The trial court entered findings of fact and conclusions of law, concluding that police seized Windham pursuant to the "community caretaking" exception to the Fourth Amendment's warrant requirement and that police thereafter developed reasonable suspicion to investigate her for driving while intoxicated.  Pursuant to a plea agreement, Windham pled guilty to driving while intoxicated and was sentenced to two years' imprisonment, assessed a fine of five hundred dollars, and her driver's license was suspended.  In

one issue on appeal, Windham contends the trial court abused its discretion in denying her motion to suppress.

## BACKGROUND

At 8:25 p.m. on April 3, 2012, the Bandera County Sheriff's Department received a report of an unresponsive person in a car parked in the parking lot next to the Bandera County Emergency Medical Services building. The report was made by EMS employee Cindy Martin, who pointed out the car to the first deputy to respond, Louie Moreno. When Moreno arrived, he saw the car matching Martin's description and observed that no one was around the car. Moreno approached the car and shined his flashlight into its interior. The car's lone occupant, Windham, was lying down on her side in the driver's seat, which was fully reclined. The flashlight awoke Windham, who sat up and opened the driver's door. Moreno identified himself as a sheriff's deputy and asked Windham, "Are you ok?" Windham did not respond. Moreno observed that the keys were in the ignition, the car engine was not running, but heat was emanating from the hood.

After Moreno spoke with Windham for two to three minutes, Deputy Jose Hernandez arrived. Hernandez immediately approached the front of Windham's car, asked her if she knew her vehicle's inspection certificate was expired, and asked her several questions to test her knowledge of her whereabouts. During this conversation with Windham, Hernandez smelled alcohol coming from the inside of the car and noticed that Windham swayed in her seat, had bloodshot eyes, and slurred her speech. Hernandez walked away and immediately called for Texas Department of Public Safety Trooper Anthony Aragones to conduct a DWI investigation. Hernandez reapproached the car and resumed his discussion with Windham who acknowledged that she had been drinking, had pulled over, and was waiting for her mother to pick her up. At all times during Windham's interaction with the deputies, either Moreno or Hernandez spoke with Windham while standing next to her car in the doorway of the open driver's side door, blocking

her exit. Trooper Aragones arrived and conducted a DWI investigation resulting in Windham's arrest.

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial court's ruling, giving "almost total deference to the trial court's determination of historical facts that are supported by the record, particularly if the findings of fact are based on credibility and demeanor." *Miller v. State*, 393 S.W.3d 255, 262 (Tex. Crim. App. 2012). The same level of deference is given to "a trial court's application of the law to the facts or to mixed questions of law and fact, especially when the findings are based on credibility and are supported by the record." *Id.* at 263. However, mixed questions of law and fact that do not turn on the evaluation of credibility and demeanor are reviewed de novo. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Application of the law of search and seizure, such as determining the reasonableness of a temporary detention, is a mixed question of law and fact that is reviewed de novo. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Salinas v. State*, 224 S.W.3d 752, 756 (Tex. App.—San Antonio 2007, pet. ref'd). Additionally, all purely legal questions are reviewed de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). The trial court's ruling will not be disturbed if it is correct under "any theory of law applicable to the case." *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

## DISCUSSION

The State does not dispute a seizure occurred when Windham was questioned in her car by Moreno and Hernandez. As the deputies had no warrant, the State must justify this seizure through an exception to the Fourth Amendment's warrant requirement. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); *Travis v. State*, 322 S.W.3d 747, 750 (Tex. App.—Texarkana 2010, no pet.). The State argues that the "community caretaking" exception applies because the deputies

reasonably believed Windham was in need of help. The State argues Windham's detention was further justified after Hernandez observed Windham's expired inspection sticker. The State contends after interacting with Windham, Hernandez also developed "at least reasonable suspicion, if not probable cause," to investigate Windham for driving while intoxicated. Windham argues that the deputies unreasonably exceeded the scope of their detention as initially justified by the community caretaking exception and that her continued detention was not justified by reasonable suspicion.

### A. Community Caretaking Exception

The first question presented is whether Moreno's detention of Windham was justified under the community caretaking exception. Without reasonable suspicion or probable cause that an offense has been committed, a police officer may, in accordance with his community caretaking function, "stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Corbin*, 85 S.W.3d at 276–77. Rather, the exception concerns police functions such as assisting individuals who cannot care for themselves or who are in danger of physical harm, resolving conflicts, and reducing the opportunities for commission of crime. *Laney v. State*, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003) (citing Wayne R. LaFave, 3 SEARCH AND SEIZURE § 6.6 (1996)).

To properly invoke the community caretaking exception, a police officer must (1) be primarily motivated by his community caretaking function, and (2) reasonably believe that the individual is need of help. *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012).

The record supports the trial court's conclusion that Moreno and Hernandez were motivated by their community caretaking function when they engaged Windham. Both deputies testified they approached Windham only after receiving a call concerning an unresponsive person in possible distress and neither had reason to believe she had committed a crime. Moreno testified the first question he asked Windham upon approaching her car was, "Are you ok?" As the Court in *Gonzales* observed, "[w]e see no reason to second-guess the trial judge's determination of an issue that is supported by the record and depends so much on credibility and demeanor." 369 S.W.3d at 855.

Next, we must determine whether Moreno's belief that Windham needed help was objectively reasonable. To determine whether an officer's belief was reasonable, we focus on what the officer observed and consider the following non-exclusive list of factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Wright*, 7 S.W.3d at 151–52.

After considering the *Wright* factors, the trial court concluded Moreno and Hernandez had a reasonable belief that Windham was in need of assistance and that the community caretaking exception was properly invoked. Windham argues that her detention, although initially justified, became unreasonable "almost immediately" because she did not exhibit any distress, was lucid, and was able to answer Moreno's questions. Windham further argues that her location—in a parked car next to an EMS facility—significantly undermines the application of the community caretaking exception because, even though she was alone, she could have easily sought help if it were needed. Windham also argues that she did not pose a danger to herself or others because she expressed no desire to leave the location on her own.

Although the *Wright* factors were "intended to assist courts in determining reasonableness in this context[,] they are not elements of reasonableness." *Gonzales*, 369 S.W.3d at 855. "As in all Fourth Amendment cases, the facts unique to each case control its result, and in cases involving the community-caretaking exception, may render certain *Wright* factors inapplicable or afford them varying weight." *Id.* The first *Wright* factor—the nature and level of the distress exhibited by the individual—is afforded the greatest amount of weight because "[t]he greater the nature and level of distress exhibited, the more likely the police involvement will be a reasonable exercise of the community caretaker function." *Corbin*, 85 S.W.3d at 277. "A particular level of distress may be seen as more or less serious depending on the presence or absence of the remaining three factors." *Id.*

There is no question that responding to a report of an unresponsive person in a parked car, regardless of its location, falls within a police officer's community caretaking function. The facts unique to this case, however, require us to determine whether Moreno's continued belief that Windham was in need of help was reasonable up until the time that Hernandez interacted with Windham. In short, we must determine whether the length of the detention was reasonable.

"A seizure under the Fourth Amendment must be objectively reasonable in light of the particular circumstances of the case." *Corbin*, 85 S.W.3d at 276; *see Cady*, 413 U.S. at 439; *see also Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). Accordingly, a seizure permitted on less than probable cause, such as one under the community caretaking exception, "must be temporary and last no longer than is necessary to effectuate [its purpose]." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see also United States v. Garner*, 416 F.3d 1208, 1213 (10th Cir. 2005). The purpose of a seizure under the community caretaking exception is to render help to those in need of it. When it is unclear whether an individual continues to be in need of help, a police officer must be given

a reasonable amount of time to diligently pursue an inquiry necessary to make that determination. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997).

We cannot hold that Moreno's brief detention, lasting only two to three minutes, unreasonably exceeded the time necessary to determine whether Windham needed help. Moreno testified that he responded to a call of an unresponsive person and found Windham lying down in the car. She woke up and opened the door. When Moreno asked Windham if she was ok, she did not respond. Moreno believed Windham was disoriented and unsure of her whereabouts. He asked Windham for her driver's license, and she searched for it unsuccessfully for several minutes. It can be reasonably inferred, based on the totality of the circumstances, Windham was also experiencing mental and physical impairments resulting from intoxication during this time. When Hernandez arrived and approached Windham, Moreno can be heard on Hernandez's audio recording asking Windham if she had been sleeping. She responds affirmatively. This exchange establishes that at that point in the interaction, Moreno was still making inquiries related to Windham's welfare. At no time did Moreno ask any questions or take any action consistent with the investigation of a criminal offense. Based on this record, it is reasonable to conclude that the entirety of Moreno's brief interaction with Windham consisted of Moreno determining whether Windham was in need of help. Accordingly, the trial court did not abuse its discretion when it concluded that Windham's initial detention was justified by the community caretaking exception.

*B. Reasonable Suspicion for Continued Detention*

Windham's detention by Moreno was justified under the community caretaking exception when Hernandez arrived and interacted with her.[1] We must now determine whether her continued

---

[1] Although Hernandez was not present with Moreno to evaluate Windham's level of distress, he was nevertheless justified in participating in Windham's detention once he arrived on the scene. *See Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987) ("Where there has been some cooperation between police officers, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether

detention after that point was justified by reasonable suspicion. The trial court concluded, "[a]fter Hernandez spoke with Windham, Hernandez had a sufficient reasonable suspicion to detain Windham to investigate whether Windham was driving while intoxicated." The State argues that after approaching Windham, Hernandez had a reasonable suspicion that she had committed two offenses: driving with an expired inspection certificate and driving while intoxicated. Citing *Texas Dept't of Public Safety v. Allocca*, 301 S.W.3d 364 (Tex. App.—Austin 2009, pet. denied), Windham contends that Hernandez did not have reasonable suspicion to continue detaining her because the act of sleeping in a parked vehicle with the engine turned off does not establish a reasonable suspicion that an individual has "operated" the vehicle. The State distinguishes *Allocca* on the grounds that it arose from an administrative hearing and involved a different standard of review.[2]

"To demonstrate reasonable suspicion, the State ha[d] to present to the trial court specific articulable facts, which, when combined with rational inferences from those facts, led [Hernandez] to reasonably suspect in light of [his] experience and knowledge that [Windham] had engaged, was engaging, or was soon to engage in criminal activity." *LeBlanc v. State*, 138 S.W.3d 603, 605 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Woods v. State*, 956 S.W.2d 33, 35, 38 (Tex. Crim. App. 1997)). This determination is an objective one considering the totality of the circumstances. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2013). It is also an offense to "operate" a motor vehicle with an inspection certificate that has been expired for more than five

---

reasonable suspicion exists."); *see also Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) ("where law enforcement authorities are cooperating in an investigation . . . knowledge of one is presumed shared by all.").

[2] *Allocca* involved review of an administrative driver's license revocation proceeding based on a "substantial-evidence" standard of review. *Allocca*, 301 S.W.3d at 367.

days. TEX. TRANSP. CODE. ANN. § 548.602(a) (West 2011). Although "operating" is not defined in the statute, the Court of Criminal Appeals has held that an individual operates a motor vehicle if the "totality of the circumstances" indicates that the individual "took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995); *see Kirsch v. State*, 357 S.W.3d 645, 649–50 (Tex. Crim. App. 2012). "[W]hile driving does involve operation, operation does not necessarily involve driving." *Denton*, 911 S.W.2d at 389.

In *Allocca*, the police responded to a call of a suspicious car parked in the parking lot of a closed Jiffy Lube and discovered Allocca asleep in the driver's seat. The engine was running to facilitate air conditioning, the headlights were turned off, the car was in park, Allocca was fully reclined in the seat, and his feet were not touching the pedals. 301 S.W.3d at 368–69. The Austin Court of Appeals held police did not have *probable cause* to arrest Allocca for DWI because the totality of the circumstances did not establish that he had operated the car. The court rejected the State's argument that police had probable cause to believe that Allocca fell asleep after driving to the parking lot intoxicated, holding, "[w]hile an officer need not observe an individual actually driving a vehicle in order to develop probable cause to believe the individual had been driving while intoxicated, the mere act of sitting in a legally parked vehicle while intoxicated does not necessarily establish probable cause *absent some other factor*, such as a recent collision or bystander reports, indicating that the accused actually drove the vehicle." *Id.* at 369 (emphasis added).

Most notably, the Court's holding in *Allocca* concerned probable cause, not reasonable suspicion. *Id.* at 367 ("[o]nly the [probable cause] factor remains in dispute in the present case, as Allocca conceded in the administrative hearing that there was reasonable suspicion to investigate him . . . ."). Reasonable suspicion may be established on less than what the law requires to establish

probable cause. *See Guzman*, 955 S.W.2d at 87 ("[p]robable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." ); *Chapnick v. State*, 25 S.W.3d 875, 877 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (after establishing reasonable suspicion for a traffic offense, additional facts required to establish probable cause necessary to arrest a defendant for driving while intoxicated). The *Allocca* court emphasized there was no evidence the car had been recently operated, noting there were no bystander reports or evidence of a collision. Additionally, there was evidence affirmatively establishing Allocca had not operated the car. Allocca, the only witness to testify, testified that after he became intoxicated at a bar, his girlfriend drove him to his parked car at the Jiffy Lube, where he was employed. *Id.* at 366.

Although Hernandez likely did not develop probable cause during his initial contact with Windham, he could have reasonably believed that Windham had operated her vehicle. Moreno testified he could feel heat emanating from the car hood without touching the hood. When Moreno arrived, Windham's car engine was off, but the keys were in the ignition. Windham was alone and seated in the driver's seat and appeared to be intoxicated. There were no alcoholic containers visible in the car to indicate Windham had become intoxicated after she parked. Based on the totality of these circumstances and rational inferences therefrom, Hernandez could have reasonably believed Windham had recently operated the car. *See Warren v. State*, 377 S.W.3d 9, 14 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (recent operation of vehicle indicated by warmth of hood). Additionally, Hernandez could have reasonably believed Windham was intoxicated because he smelled a strong odor of alcohol coming from the car, Windham's eyes were bloodshot, she was slurring her words, and was swaying in her seat. *See State v. Priddy*, 321 S.W.3d 82, 88 (Tex. App.—Fort Worth 2010, pet. ref'd); *see also Rubeck v. State,* 61 S.W.3d 741,

- 10 -

745 (Tex. App.—Fort Worth 2001, no pet.); *see also Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985). Thus, Hernandez developed a reasonable suspicion that Windham had committed the offense of driving while intoxicated to justify Windham's continued detention. This reasonable suspicion was further bolstered by Windham's admission several minutes later that that she had been drinking earlier that evening at a local bar and drove to the parking lot. In addition, Hernandez developed a reasonable suspicion that Windham committed an offense by operating the vehicle with an expired inspection certificate. *Taylor v. State*, 410 S.W.3d 520, 528 (Tex. App.—Amarillo 2013, no pet.); *Dean v. State*, 995 S.W.2d 846, 848 (Tex. App.—Waco 1999, pet. ref'd).

Windham argues that in other cases where a defendant was found sleeping in a motor vehicle and arrested for DWI, more facts were required to establish that the defendant operated the vehicle. *See Freeman v. State*, 69 S.W.3d 374, 376 (Tex. App.—Dallas 2002, no pet.) (evidence legally sufficient to establish operation where defendant found asleep in driver's seat of car parked in the street with engine running, lights on, gear in "drive," and with the tire resting against the curb); *Hearne v. State*, 80 S.W.3d 677, 680 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (evidence legally sufficient to establish operation where defendant found asleep in driver's seat of truck parked in moving lane of traffic with engine running, gear in "park," and defendant not touching the pedals); *State v. Savage*, 905 S.W.2d 272, 274 (Tex. App.—San Antonio 1995), *aff'd* 933 S.W.2d 497 (Tex. Crim. App. 1996) (same). However, the instant case does not require us to determine whether legally sufficient evidence established Windham's operation of the vehicle. Rather, we are to determine whether Hernandez had a reasonable suspicion that Windham had operated her vehicle, a standard which requires far less proof than that required to establish guilt beyond a reasonable doubt. *See Guzman*, 955 S.W.2d at 87. Because we conclude that Hernandez

had a reasonable suspicion to justify Windham's continued detention, we hold that the trial court did not abuse its discretion by denying the motion to suppress Windham's seizure.

## CONCLUSION

The trial court did not abuse its discretion when it denied Windham's motion to suppress. The deputies were justified in initially detaining Windham under the exercise of their community caretaking function and thereafter developed reasonable suspicion that she had committed the offenses of driving while intoxicated and driving with an expired inspection certificate. The judgment of the trial court is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH