# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 18, 2011

Lyle W. Cayce
Clerk

No. 10-10695

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSE JUAN HERNANDEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Chief Judge:

Jose Juan Hernandez appeals the district court's order denying his motion to suppress illegal drugs obtained after federal agents inserted a GPS device on the undercarriage of his brother's truck, without a warrant, to track its whereabouts. Concluding that Hernandez has "standing" to challenge the use, but not the placing, of the device, we find no error in the district court's decision and affirm the conviction.

No.  10-10695

## BACKGROUND

In 2007, Drug Enforcement Administration agents began investigating the appellant's brother, Angel Hernandez ("Angel"), for suspected drug trafficking in the Dallas, Texas area.  Through prior surveillance, the officers knew Angel drove a Chevrolet pickup truck in his drug trafficking operation.  The truck was registered to Angel, and visual surveillance confirmed that Angel was the primary driver, although Angel's girlfriend also drove the truck on occasion.

Early in the morning of February 13, 2008, a DEA agent observed the truck parked on a public street in front of Angel's residence.  Sometime between midnight and 4:00 a.m., an agent crawled under the back of the truck and attached a GPS tracking device to the undercarriage with a magnet.  The agent did not have a warrant to attach or use the device.  Soon afterward, the GPS began transmitting the truck's location to DEA officers in the Dallas Communication Center.

This unsophisticated battery-operated GPS device, known as a "slap-on tracker," was accurate to 50 yards, but could neither relay a precise address nor transmit a signal from an enclosed area like a garage. Instead of a  continuous signal, the device emitted a  "ping" at intervals ranging from 15 minutes to two hours.

Two days after the GPS was installed, DEA agents intercepted phone calls (pursuant to a warrant) between Angel and  Jose Hernandez ("Hernandez"), the appellant here.  The calls indicated that Hernandez was driving Angel's truck to a particular hotel in California to pick up drugs for the Texas operation. Using the GPS device, agents determined that Hernandez was driving the truck westbound on a highway.  In California, DEA agents were informed of the transaction, located Hernandez's truck and conducted visual surveillance without the GPS.[1]  The officers observed Hernandez load several packages onto

2

No. 10-10695

the truck before leaving the hotel. They contacted local patrol officers who stopped Hernandez for traffic violations; he consented to a vehicle search that produced 20 pounds of methamphetamine hidden in the packages.

Hernandez was eventually charged in federal court with one count of conspiracy to possess with intent to distribute and distribution of a controlled substance in violation of 21 U.S.C. § 846. After seeking unsuccessfully to suppress the methamphetamine evidence, Hernandez entered a conditional plea agreement and was sentenced to 188 months imprisonment. He timely appealed. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

On appeal of a motion to suppress, "the district court's findings of facts are reviewed for clear error, viewing the evidence in the light most favorable to the government. The district court's conclusions of law are reviewed *de novo*. The panel may affirm the district court's decision on any basis established by the record." *United States v. Charles*, 469 F. 3d 402, 405 (5th Cir. 2006) (internal citations and quotation marks omitted).[2]

Hernandez argues that both the placement and the use of the GPS device independently violated his Fourth Amendment rights, requiring suppression of

---

[1] Indeed, the battery on the GPS device died soon after the officers established visual surveillance.

[2] The government contends that the issue whether the use of the GPS device violated Hernandez's Fourth Amendment rights should be subject to plain error review because in the district court proceedings, Hernandez challenged only the placement, and not the use, of the GPS device. The record belies this argument. At the suppression hearing, Hernandez's attorney explicitly challenged the legality of using the GPS to track Hernandez's movements as between public and private locations. That sufficiently preserved the error to justify *de novo* review. *Cf. United States v. Rose*, 587 F.3d 695, 703 (5th Cir. 2009).

No.  10-10695

the recovered drugs.  A preliminary issue raised by the government, however, is whether Hernandez lacks "standing" to pursue these claims.

## I.     Standing

The government contends that Hernandez does not have standing to challenge the placement or use of the GPS device because he had no reasonable expectation of privacy in the truck.  The district court declined to decide whether Hernandez had standing.

Hernandez cannot claim the protection of the Fourth Amendment unless he "has a legitimate expectation of privacy in the invaded place."  *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  This requirement is typically referred to as "standing," although the term is used "for brevity's sake" and exists apart from the question of Article III standing.  *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).  Hernandez's expectation must be "personal[]" and "reasonable," and it must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citations and internal quotations omitted).  Standing does not require an ownership interest in the invaded area; in *Minnesota v. Olson*, 495 U.S. 91 (1990), for example, the Court recognized that an overnight guest in a home has a legitimate expectation of privacy in that home.  Hernandez bears the burden of establishing standing.  *See Rakas*, 439 U.S. at 130 n.1.

We conclude that Hernandez lacks standing to challenge the placement of the GPS device on his brother's truck.  The truck was registered to Angel.  Angel was the primary driver, but Hernandez was not a regular driver.  When the GPS was attached, the truck was parked on the street at Angel's house, and nothing

No. 10-10695

in the record suggests that Hernandez had any possessory interest in that house.[3]

Moreover, the government did not place the GPS device with the intent of tracking Hernandez. (Angel, on the other hand, was under court-approved surveillance by wiretaps.) There is no suggestion that the government knew Hernandez would drive the truck to California on a drug run. Hernandez "has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*, 439 U.S. at 130 n.1. He has not demonstrated that he had "a legitimate expectation of privacy in the invaded place." *Rakas*, 439 U.S. at 143. Any expectation of privacy he might have is not based in "concepts of real or personal property law" or "understandings that are recognized and permitted by society." *Carter*, 525 U.S. at 88. Thus, Hernandez lacks standing to challenge the placement of the GPS device.[4]

---

[3]  Hernandez argues that the truck was entitled to special Fourth Amendment protection because it was parked within the curtilage of a home. We reject that contention because a public street can never fall within a home's curtilage. We have held explicitly that a defendant's expectation of privacy is "substantially reduced" in a vehicle "parked in plain view, in a public place." *United States v. Michael*, 645 F.2d 252, 257-58 (5th Cir. 1981) (en banc). Angel's truck was parked on a public street, and therefore, was not within the curtilage of a home.

[4]  Even if Hernandez had standing to challenge the placement of the GPS device, there was no Fourth Amendment violation. Placing the GPS device under the car was not a search because a car's undercarriage "is thrust into the public eye, and thus to examine it does not constitute a search." *New York v. Class*, 475 U.S. 106, 114 (1986) (citations and quotation marks omitted). Other circuits, relying on *Class*, have held, for example, that no search existed when an officer "knelt down and looked under the car with a flashlight." *United States v. Rascon-Ortiz*, 944 F.2d 749, 750 (10th Cir. 1993).

Nor was the placement of the GPS device an unconstitutional seizure. A "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Karo*, 468 U.S. 705, 712 (1984) (internal quotations and citations omitted). Applying *Karo*, the Seventh Circuit has squarely rejected the notion that attaching a GPS device to a car's undercarriage constitutes a seizure. *See United States v. Garcia*, 474 F.3d 996-97 (7th Cir. 2007) ("The device did not affect the car's driving qualities, did not draw power from the car's engine or battery, did not take up room that might

No.  10-10695

However, Hernandez has demonstrated standing to challenge the use of the GPS device to follow the truck's path.  The government does not dispute that Hernandez had permission to drive Angel's truck.  This court held in *United States v. Lee* that "where a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing to challenge its search."  898 F.2d 1034, 1038 (5th Cir. 1990).  *Lee*'s reasoning supports by analogy that Hernandez had an interest in the truck sufficient to confer standing to challenge the use of the tracking device.

## II.    Use of the GPS Device

Hernandez asserts that the government's use of the hidden GPS to track his movements constituted an unconstitutional warrantless search.  We disagree.

In *United States v. Michael*, 645 F.2d 252, 257-58 (5th Cir. 1981) (en banc), this court approved the warrantless use of a broadcasting beeper attached to the exterior of a rented van to track a suspect.  The court relied on the lesser expectation of privacy that has historically been applied to motor vehicles, the relatively non-intrusive nature of the device's installation and use, and the fact that the agents had reasonable suspicion to believe the suspect was trafficking in illegal drugs.  The beeper, in sum, "only aided the agents in the performance of their lawful surveillance."  *Id.*  Two years later, the Supreme Court held in *United States v. Knotts* that the use of an electronic beeper broadcasting its location from its placement inside a five gallon drum "was neither a 'search' nor a 'seizure' within the contemplation of the Fourth Amendment."  460 U.S. 276,

---

otherwise have been occupied by passengers or packages, did not even alter the car's appearance, and in short did not 'seize' the car in any intelligible sense of the word.").

No. 10-10695

285 (1983); see *United States v. Butts*, 729 F.2d 1514, 1518 n.4 (1984) (en banc) (acknowledging *Knotts*).

Recently, other circuits have held that the use of post-*Knotts* GPS technology to monitor a vehicle's movements is not a search governed by the Fourth Amendment. *See United States v. Cuevas-Perez*, ___ F.3d ___, 2011 WL 1585072 (7th Cir. Apr. 28, 2011); *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010); *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007). And the Eighth Circuit has noted that "when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time." *United States v. Marquez*, 605 F.3d 604, 609-10 (8th Cir. 2010).

The only arguably contrary authority arises from the D.C. Circuit, which concluded that *extensive* GPS monitoring of a subject's movements over the course of a month does constitute a search because "the likelihood a stranger would observe all those movements is not just remote, it is essentially nil." *United States v. Maynard*, 615 F.3d 544, 560 (D.C. Cir. 2010), cert granted, ___ U.S. ___. *Maynard* concluded, in other words, that even though GPS monitoring of an individual trip is not a search, the aggregated monitoring of a suspect's daily comings and goings somehow becomes a search. Regardless of our theoretical concern about continuous GPS monitoring, *Maynard* is easily distinguished because here, Hernandez's movements were recorded over a single cross-country trip. He was not subject to continuous, around-the-clock electronic surveillance over the extended period of time that concerned the *Maynard* court.

Hernandez attempts to distinguish the GPS device from the beepers at issue in *Knotts* and *Michael*. He suggests that GPS monitoring is more intrusive

than the *Knotts* beeper because, *inter alia*, GPS units do not require police to follow the suspect visually, do not allow the driver to detect tailing, and do not require an expensive deployment of equipment and manpower. Moreover, Hernandez contends that GPS devices automatically monitor the suspect continuously, follow suspects "great lengths onto private or gated property," and provide minute-by-minute data recording.

Hernandez may be correct that some GPS systems offer significantly enhanced monitoring options. But the record here indicates that the GPS was similar to the beeper at issue in *Knotts* and *Michael*. Testimony at the suppression hearing indicated that the GPS device transmitted a "ping" at regular intervals ranging from 15 minutes to two hours. The DEA Dallas Communication Center was not monitoring Hernandez at all times. Moreover, the DEA agents relied on the GPS for only a brief period of time to find Hernandez traveling westbound toward California. Later, they established visual surveillance and ceased using the GPS. Regardless of what a GPS system *could* do, this GPS was not much more than a glorified, more efficient beeper. We do not mean to suggest that the government's use of a top-of-the-line GPS, which Hernandez describes as being capable of continuous, precise surveillance, would constitute a search. But that case is not before us.

## CONCLUSION

Hernandez has no standing to challenge the placement of the GPS device. The DEA agents' use of the surreptitious GPS device to track Hernandez was not a search within the meaning of the Fourth Amendment. The judgment of the district court is therefore AFFIRMED.