# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

No. 13-30545

**FILED**

August 19, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

WILLIAM IRAHETA; CHRISTIAN MIGUEL GONZALEZ; RODOLFO MERAZ-GARCIA,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and DENNIS, Circuit Judge, and GILSTRAP\*, District Judge.

CARL E. STEWART, Chief Judge:

This is an appeal of the district court's grant of Gonzalez and Meraz-Garcia's motions to suppress drugs obtained pursuant to an automobile search by police at a traffic stop.  For the following reasons, we AFFIRM.[1]

---

\* District Judge for the Eastern District of Texas, sitting by designation.

[1] This interlocutory appeal was brought by the United States on the grounds that it "could not proceed to trial without this evidence." Thus, it appears that the indictment and the case are still pending.  We leave it to the parties and to the district court on remand to take such further action as is appropriate.

No. 13-30545

## FACTS AND PROCEEDINGS

On October 27, 2012, around 2:45 a.m. Deputy Seth Cox of the Ouchita Parish Sheriff's Office entered I-20 eastbound at the Camp Road on-ramp. While he was entering the highway, a vehicle in front of him immediately applied its brakes. As he entered behind the vehicle, he observed it cross the center line and come back into its lane of travel. He believed that the driver may have been falling asleep or intoxicated. He wrote down the vehicle's license plate information, which was from California, and planned to initiate a stop. When he radioed headquarters he learned that the vehicle's registration had been suspended as of October 8, 2012.

Cox waited to initiate the traffic stop until the Thomas Road exit where other officers were nearby and he called for assistance due to the number of occupants in the vehicle. Two deputies, Honey and Waggoner, arrived separately to assist Cox. As the driver approached the Thomas Road exit, he activated his right turn signal and began to slow-down but then deactivated the signal and accelerated. Cox then initiated the traffic stop just after the Thomas Road exit for illegal lane usage and operating a vehicle with a suspended registration.

After initiating the stop, Cox talked to William Iraheta, the driver of the vehicle. Iraheta gave Cox his driver's license and vehicle registration. Iraheta stated that he was tired and looking for a place to stop to rest. Cox then called in the vehicle identification number (VIN) and dispatch told him that the vehicle's registration was suspended and Iraheta's driver's license was also suspended.

At this point, Cox asked Iraheta to exit the vehicle and took Iraheta back to the trunk of the car, just in front of where Cox's patrol vehicle was parked. Cox asked Iraheta about Iraheta and the passengers' itinerary and

2

relationship to each other.  He also asked the front seat passenger, Christian Miguel Gonzalez, about their itinerary.  Both Iraheta and Gonzalez explained that they were traveling from California to Miami for a birthday party, but Iraheta stated that the passengers were "cousins" and Gonzalez disclaimed any familial relation.  Cox noted that Gonzalez was giving short, vague answers and looking to the passenger in the back seat, Rodolfo Meraz-Garcia, before answering the questions.  When confronted with the conflicting stories about their relationship, Iraheta stated that what he meant was they were "like family."

Deputy Cox also asked Iraheta if there was any contraband in the car, which Iraheta denied.  Cox explained that they were looking for narcotics and asked permission to search the car; Iraheta consented.  The deputies agree that no one explained to any of the Defendants that they could limit or refuse consent to the search.  Additionally, it is clear from the record that the passengers, Gonzalez and Meraz-Garcia, remained in the car with the windows up and could not hear the exchange between Cox and Iraheta.  Prior to the search, but after obtaining consent, the deputies asked Gonzalez and Meraz-Garcia to exit the vehicle and patted them down for officer safety.  Iraheta asked to and was allowed to retrieve his jacket from the trunk.  He left the trunk open and rejoined the other passengers next to Cox's vehicle.  Waggoner remained with the passengers on the side of the interstate near Cox's vehicle, which was positioned behind Iraheta's.  He watched Iraheta, Gonzalez, and Meraz-Garcia (collectively Defendants) as Cox and Honey searched the vehicle.

Cox searched the front of the vehicle and proceeded to the trunk while Honey searched the passenger area.  Cox observed several bags in the trunk. No bags were marked in a way that identified an owner and none of the occupants of the car objected to the search or claimed ownership of the bags.

Cox noticed that one bag, a large black duffel bag, was heavier than the others. He proceeded to open it and he discovered shrink wrapped packages of suspected cocaine and methamphetamine. Cox did not ask for consent to search the bags.

Defendants were placed in handcuffs, advised of their Miranda rights, and transported to the Metro Narcotics Unit for further investigation. Each Defendant consented to being interviewed without an attorney. Iraheta stated that he did not know who put the black duffel bag in the car but that Meraz-Garcia and Gonzalez placed the bags in the trunk. Meraz-Garcia stated that Gonzalez put the black duffel bag in the trunk and that his bag was blue. Gonzalez stated that he only put his bag, an Adidas bag, in the trunk. When confronted with the conflicting stories, Meraz-Garcia "stated that he did not know who put the bag in the vehicle."

Defendants were charged in a four-count indictment with conspiracy to possess with intent to distribute cocaine, methamphetamine, and a mix of methamphetamine; and knowing possession with intent to distribute the same drugs. Each Defendant filed a motion to suppress the drugs. Defendants argued that the initial stop was unjustified and made additional arguments regarding Iraheta's consent and the length of the detention. The Government responded that the initial stop was valid and the subsequent detention was supported by reasonable suspicion. The Government also argued that Iraheta's consent was voluntary and the scope of this consent included the bags in the trunk of the vehicle. Moreover, the Government argued that no one objected to the search at that time. The pretrial matter was referred to the Magistrate Judge (MJ) for a report and recommendation. *See* 28 U.S.C. § 636(b)(1).

No. 13-30545

The MJ recommended granting the motions to suppress because Iraheta's general consent to search the vehicle could not justify the warrantless search of the duffle bag. First, the MJ concluded that the stop was justified at its inception because Cox had witnessed Iraheta making un-signaled lane changes and Iraheta admitted to being fatigued. Next, the MJ concluded that the prolonged detention and questioning of Defendants was justified. Finally, the MJ addressed the issue of Iraheta's consent. The MJ compared the case to two Fifth Circuit cases, *United States v. Navarro*, 169 F.3d 228 (5th Cir. 1999) and *United States v. Jaras*, 86 F.3d 383 (5th Cir. 1996), *reh'g en banc denied*, 96 F.3d 764 (5th Cir. 1996). The MJ concluded that Iraheta did not have actual nor apparent authority to consent to a search of the bag because the bag was in the trunk and there was no evidence that Iraheta had mutually used or had joint access to the bag. Further, the MJ concluded that it was unreasonable for the officers to assume, given their knowledge of the long distance road trip, that the bag belonged to Iraheta and that his consent to search would extend to the bag.

In a footnote in the report, the MJ noted that the Government had not raised, and had therefore waived, the issue of Defendants' standing[2] to challenge the search. In its objections to the recommendations, for the first time, the Government (1) challenged Defendants' standing to object to the search and (2) argued the applicability of the inevitable discovery doctrine.[3]

---

[2] The requirement that a defendant show a "legitimate expectation of privacy" in the place or thing searched is typically referred to as "standing." *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (quoting *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010)). This is "'for brevity's sake'" and exists apart from the question of Article III standing. *Id.* It is a part of the merits of Defendants' claim but will be referred to as "standing" throughout this opinion.

[3] The Government argued inevitable discovery of the drugs on two separate grounds in its objections; however, the Government is not appealing the district court's rejection of those arguments.

5

No. 13-30545

Defendants argued that the Government waived the issue of standing through its failure to raise it in a timely manner to the MJ.

Ultimately, the district court adopted the MJ's report and recommendation and granted Gonzalez's and Meraz-Garcia's motions to suppress the physical evidence. However, the district court denied Iraheta's motion to suppress, concluding that he lacked standing to challenge the search. The district court ruled that the Government had not waived the issue and it had the authority to consider standing. The Government timely filed this appeal pursuant to 18 U.S.C. § 3731.[4]

## DISCUSSION

The Government makes two arguments on appeal: (1) Defendants do not have standing sufficient to support a Fourth Amendment challenge; and (2) Iraheta's general consent extended to the luggage in the trunk because absent any objection or notice, a reasonable officer would conclude that Iraheta's consent included consent to search the luggage in the trunk. Defendants argue three grounds to support the district court's order of suppression: (1) the Government waived the issue of standing by failing to raise it to the MJ, or in the alternative, that there is standing; (2) Iraheta's general consent does not

---

[4] Although the district court denied Iraheta's motion to suppress, it suppressed the evidence as to all Defendants because it was a joint trial. The statutory basis for this appeal, 18 U.S.C. § 3731, does not provide a right for defendants to cross-appeal. *See United States v. Shameizadeh*, 41 F.3d 266, 267 (6th Cir. 1994) ("It is well settled that a criminal defendant cannot take an immediate appeal from an order denying a pretrial motion to suppress evidence. . . . Although 18 U.S.C. § 3731 permits the government to take an immediate appeal from an order *granting* a pretrial motion to suppress, that statute does not provide for a cross-appeal by a defendant." (citations omitted)); *see also United States v. McCarter*, 250 F.3d 744, *1 n.2 (5th Cir. 2001) (per curiam) (unpublished) (noting that this court granted a motion to dismiss a defendant's cross-appeal for lack of jurisdiction pursuant to 18 U.S.C. § 3731). Consequently, Iraheta does not raise arguments specific to the denial of his motion to suppress and only raises arguments that are applicable to Gonzalez and Meraz-Garcia. The Government included Iraheta as a party in the appeal and has not argued against his inclusion; however, we do not have jurisdiction to make any decision with regard to Iraheta's case.

extend to the luggage in the trunk and it was unreasonable for the officer to assume it would; and (3) in the alternative, the stop was unconstitutional because of its duration.[5]

"On appeal of a motion to suppress, the district court's findings of facts are reviewed for clear error, viewing the evidence in the light most favorable [to the prevailing party].  The district court's conclusions of law are reviewed *de novo*." *United States v. Hernandez*, 647 F.3d 216, 218 (5th Cir. 2011) (internal quotation marks omitted).  "The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (internal quotation marks and citation omitted).  We "may affirm the district court's decision on any basis established by the record." *Pack*, 612 F.3d at 347; *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999).

Whether a defendant has standing to question the legality of a search is a question of law subject to de novo review.  *United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996).  Factual findings supporting the determination of the standing question are reviewed for clear error.  *Id.*  Similarly, the scope of consent to a search is a question of law that we review de novo.  *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666 (5th Cir. 2003).  The factual circumstances surrounding the consent are reviewed for clear error, which is a particularly strong standard when the factual determinations are made based on oral testimony given at a suppression hearing.  *Id.*

---

[5] Although there is no right to cross-appeal, a defendant may make "any arguments he may have advanced in the district court which would provide an alternative basis for affirming the order of suppression." *Shameizadeh*, 41 F.3d at 267 (collecting citations).

No. 13-30545

## A. Fourth Amendment Standing

The Government has not waived the issue of whether Meraz-Garcia and Gonzalez have the requisite standing to support a Fourth Amendment claim. The district court appropriately exercised its discretion and decided the issue even though it was not presented to the MJ. *See Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 307 & n.27 (5th Cir. 1999); *Stephens v. Tolbert*, 471 F.3d 1173, 1176–77 (11th Cir. 2006) (holding that the district court has discretion to hear an argument not presented to the magistrate judge). We conclude that under these facts there was no abuse of the district court's discretion in entertaining this argument.[6]

In order to claim the Fourth Amendment's protection, a defendant must have "a legitimate expectation of privacy in the invaded place." *Hernandez*, 647 F.3d at 219 (internal quotation marks and citation omitted). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). A defendant's "expectation must be 'personal[]' and 'reasonable,' and it must have

---

[6] In *Requena-Ramirez*, the district court merely stated that it considered the petitioner's objections and did not explicitly address the argument, which we concluded was not waived. 190 F.3d at 307. We gave four reasons for concluding that a petitioner had not waived the argument: (1) the argument was raised to the district court by the petitioner; (2) the district court stated that it had considered the petitioner's objections, which raised the argument; (3) the argument was purely legal in nature; and (4) the Government was not prejudiced as it had fully briefed the issue and won on it. *Id.* Each of these considerations is present in this case: (1) the Government raised the argument to the district court; (2) the district court fully considered it; (3) the argument is purely legal in nature; and (4) Meraz-Garcia and Gonzalez were not prejudiced by the belated introduction of the argument. Further, the district court here did explicitly address the issue and appropriately chastised the Government for its failure to raise the argument earlier. We take note that although standing is a question of law, such an inquiry involves important factual determinations. *See Riazco*, 91 F.3d at 754. However, neither Meraz-Garcia nor Gonzalez have ever argued that they were unable to develop the facts necessary to establish standing as a result of the Government's delay. Therefore, we see no basis to distinguish *Requena-Ramirez* from this case.

8

a 'source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'"   *Hernandez*, 647 F.3d at 219 (alteration in original) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).   In other words, a defendant's standing "depends on 1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and 2) whether that expectation of privacy is one which society would recognize as [objectively] reasonable."   *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037–38 (5th Cir. 1990) (citation omitted).   "Standing does not require an ownership interest in the invaded area . . . ."   *Hernandez*, 647 F.3d at 219.

We have recognized that "passengers who assert[] neither a property nor a possessory interest in the automobile that was searched, nor any interest in the seized property, ha[ve] no legitimate expectation of privacy entitling them to the protection of the [F]ourth [A]mendment."   *United States v. Greer*, 939 F.2d 1076, 1093 (5th Cir. 1991) (citing *Rakas*, 439 U.S. at 148).   However, "[t]he owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the contents of his suitcase."   *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993) (citation omitted).   A defendant who abandons or disclaims ownership of property *prior to the search* does not have standing to challenge a search subsequent to his abandonment or disclaimer of that property.   *See, e.g.*, *United States v. Johnson*, No. 07-30955, 2008 WL 3876550, at *2–3 (5th Cir. 2008) (per curiam) (unpublished) (holding that a defendant had no standing when he had abandoned a fanny pack by leaving it on another's property without permission *prior to* the search); *United States v. Roman*, 849 F.2d 920, 922 (5th Cir. 1988) (holding that a defendant had no standing because the defendant had abandoned his luggage prior to the search

at an airport); *United States v. Anderson*, 500 F.2d 1311, 1317–18 (5th Cir. 1974) (holding that defendants had no standing because the defendants had "abandoned the luggage *before the search* took place" (emphasis added)).

Neither Gonzalez nor Meraz-Garcia denied ownership of the bag prior to its search, and therefore, neither has abandoned the luggage. *See Roman*, 849 F.2d at 922. We have recognized that passengers have standing to challenge searches to their luggage. *See Jaras*, 86 F.3d at 389; *Buchner*, 7 F.3d at 1154. Gonzalez and Meraz-Garcia have asserted a protectable privacy interest in their luggage based on *Jaras* and *Buchner*. *Cf. United States v. Molina-Garcia*, 634 F.2d 217, 218 (5th Cir. Unit A Jan. 1981) (discussing how defendants failed to establish standing by not making any attempt to assert an interest in the house or van that was searched). Therefore, they have asserted a sufficient interest in the bag searched to support standing to allege a Fourth Amendment claim.[7]

**B. The Scope of Iraheta's Consent**

Because Gonzalez and Meraz-Garcia have standing to challenge the search, we must address whether the search of the luggage was unconstitutional. "It is well-established that warrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement, and that consent is one of the specifically established exceptions to the requirements of both a warrant and probable cause." *Jaras*, 86 F.3d at

---

[7] Additionally, the district court did not conclude, nor is there evidence to support, that Gonzalez and Meraz-Garcia even knew Iraheta had consented to the search. *Cf. United States v. Langston*, 970 F.2d 692, 697–98 (10th Cir. 1992) (concluding that defendant did not have sufficient standing to assert a Fourth Amendment claim where defendant did not assert a protectable privacy interest in a plastic bag in the trunk and remained silent while his co-defendant specifically consented to a search of the bag). Under the circumstances of this case, it is unreasonable to expect Gonzalez and Meraz-Garcia to affirmatively identify the bag as theirs at the time of the search for purposes of later asserting standing to challenge the search.

388 (internal quotation marks and citations omitted).   "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).   Therefore, based on the facts, consent must reasonably be understood to extend to a particular container.  *Id.* at 251–52. ("It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag.").   Generally, there is no requirement for additional authorization to search such containers. *Id.*

The Government must demonstrate by a preponderance of the evidence that such consent is: (1) voluntary; and (2) given by the defendant himself (actual authority) or by a third party with the ability to furnish valid consent (apparent authority).  *See Jaras*, 86 F.3d at 389.   "A suspect may of course delimit as he chooses the scope of the search to which he consents."  *Jimeno*, 500 U.S. at 252.   "Absent any limitation placed by the suspect, his consent to search a car will support an officer's search of unlocked containers within it." *United States v. Cotton*, 722 F.3d 271, 276 n.16 (5th Cir. 2013) (citations omitted).

To establish actual authority there must be proof that the consenting party and the party challenging the search "mutually used the property searched and had joint access to and control of it for most purposes."  *United States v. Rizk*, 842 F.2d 111, 112 (5th Cir. 1988) (per curiam), *cert. denied*, 488 U.S. 832 (1988).   The sole fact that luggage is located in a car's trunk is insufficient to show joint control over those items.  *Jaras*, 86 F.3d at 389 (collecting citations).   To establish apparent authority there must be a finding

that the searching officers "reasonably (though erroneously) believe[d] that the person who has consented to their" search had the authority to so consent. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990); *see also Jaras*, 86 F.3d at 389. "[T]he factual circumstances are highly relevant when determining what the reasonable person would have believed to be the outer bounds of the consent that was given." *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir. 2003) (citing *United States v. Ibarra*, 965 F.2d 1354, 1457 (5th Cir. 1992) (en banc)).

As the district court correctly noted, there are two cases in this Circuit applicable to these facts. In the first case, *Jaras*, the co-defendant, who was the driver and owner of the car, gave consent to search the car. 86 F.3d at 386. However, when the trunk was opened the co-defendant stated that the suitcases, where incriminating evidence was later discovered, belonged to the defendant, Jaras. *Id.* The officer informed Jaras that his co-defendant had consented to the search but did not ask for Jaras's consent to search the suitcases. *Id.* The officer did ask Jaras what was inside of the suitcases. *Id.* Jaras responded that he did not know. *Id.* We held that the officer did not have authority, actual or apparent, to search the suitcases. *Id.* at 389–90. Importantly, there was no apparent authority because the officer was clearly informed by the co-defendant that the bags were Jaras's; therefore, he was "on notice that [the co-defendant's] consent to search did not extend to the luggage." *Id.* at 389. Reliance on the co-defendant's consent thereafter was unreasonable. *Id.* at 390.

In the second case, *Navarro*, a co-defendant consented to a search of the vehicle he was driving with two passengers, including the defendant, Navarro. 169 F.3d at 230. The officer found methamphetamine in a brown duffle bag on the back seat of the vehicle on which Navarro had been leaning. *Id.* We held

that Navarro's co-defendant's consent was voluntary and that his general consent extended to "the entire vehicle, including the luggage contained therein." *Id.* at 232. We distinguished *Jaras* by noting that: (1) there was no indication that the co-defendant had advised the officers that the luggage in the vehicle was not his and (2) the luggage was located not in the trunk but in plain view on the back seat of the car. *Id.* Additionally, we found it instructive that neither Navarro nor his co-defendant objected to the search of the bag. *Id.*

The Government argues that the luggage in the trunk was within the scope of Iraheta's consent because all of the requirements for objective reasonableness under *Jimeno* have been met. However, as the district court found, an officer cannot conduct a search outside the scope of what a consenting party has authority to consent to. Iraheta clearly did not have actual authority to consent to the search of multiple pieces of luggage in the trunk of a vehicle occupied by him and two passengers. The Government has failed to point to any facts, other than the fact that the duffle bag was in the trunk of the car, that demonstrate "mutual use" or "joint access" sufficient to confer such authority. Without more, the fact that the luggage was found in the trunk of a car is insufficient to establish actual authority. *See Jaras*, 86 F.3d at 386 ("The fact that [defendant's] suitcases were contained in the trunk of a car in which he was a passenger is insufficient to show that [the driver] mutually used and had joint control over the suitcases.").

In terms of apparent authority—what the officers reasonably believed Iraheta had authority to consent to—the Government agrees that this case lies somewhere in between *Jaras* and *Navarro*. It is unlike *Jaras* in that no one alerted the officers to the fact that the luggage was not Iraheta's. It is also unlike *Navarro* in that it cannot be said the officers did not have notice that

the bag did not belong to Iraheta and the bags were in the trunk. [8] Defendants consistently stated that they were traveling from California to Miami and even asked Deputy Waggoner how far it was from where they were stopped to Miami while the car was being searched. There were three people in the car and the number of bags in the trunk was consistent with three people traveling from California to Miami. The car was stopped in Louisiana, had California plates, and was previously registered in California. Taken together these circumstances would put reasonable officers on notice that Iraheta could not give consent to a search of all of the bags in the trunk.

The Deputies themselves comprehended the unreasonableness of the notion that Iraheta's consent extended to the duffle bag in the trunk. Deputy Cox stated that he did not know how many bags were in the trunk,[9] who the bags belonged to at the time,[10] and never inquired into their ownership.[11] Defense counsel asked Deputy Cox "Did you reasonably believe, based on any facts, that Mr. Iraheta had the authority of the other two gentleman to give you permission to search their bags?" and he responded with only "Nobody told me I couldn't." He later stated—when asked why he did not obtain the consent of Defendants—that he did not do so because he "had consent from the driver to search the vehicle." Deputy Honey also stated that although he could not

---

[8] Additionally, unlike *Navarro* the officers here never informed Meraz-Garcia nor Gonzalez about Iraheta's consent.

[9] Deputy Cox stated, "I honestly can't remember how many bags were in the trunk. There were several bags in the trunk." He answered affirmatively when asked, "Did you find that there being bags in the trunk would be consistent with three men driving from California to Miami?" He also answered affirmatively, stating "Yes, sir, more than likely" when asked "So it was reasonable to assume that Mr. Iraheta had one bag, Mr. Gonzalez probably had a bag and Mr. Garcia probably had a bag?"

[10] In response to defense counsel's questioning, Deputy Cox stated, "I didn't know who the bags belonged to at the time, sir," and "I never asked him [Iraheta] about the bags in the trunk."

[11] In response to defense counsel's questioning, Deputy Cox answered "No" to whether he asked Defendants if he could search their bags.

see how many bags there were, if there were in fact multiple bags it "possibly" would have been necessary to get the occupants to identify ownership of the bags.[12]

Although Defendants did not object to the search nor claim ownership of the luggage searched, we conclude that that is not decisive under these facts. It is undisputed that both Gonzalez and Meraz-Garcia did not hear Iraheta give consent to the search nor were they ever informed of Iraheta's consent by the officers.[13] Under these circumstances, the onus was on the officers to act reasonably. *See Mendoza-Gonzalez*, 318 F.3d at 667 ("[T]he factual circumstances are highly relevant when determining what the reasonable person would have believed to be the outer bounds of the consent that was given."). All of the facts indicated a likelihood that the bag did not belong to Iraheta, and therefore, it was unreasonable to rely on Iraheta's consent alone in searching the bag. *See United States v. Cantu*, 426 F. App'x 253, 257–58 (5th Cir. 2011) (per curiam) (unpublished) (stating that *Jaras* "has been the law of this circuit for almost 15 years" and holding that where an officer knew the bag searched belonged to someone else who had not given consent, the search was illegal), *cert. denied* 132 S. Ct. 357 (2011). Therefore, the search was unconstitutional. The district court properly granted Gonzalez and Meraz-Garcia's motions to suppress.[14]

---

[12] Defense counsel asked Deputy Honey: "If in fact there were [multiple bags], would it have been necessary to get some -- each of the occupants to identify the ownership of each bag?" Deputy Honey responded: "Possibly, sir. Like I said I can't testify to that due to the fact I wasn't in that part of the vehicle. I don't know what Deputy Cox saw. I don't know what he said, sir."

[13] It is unclear whether either Defendant could even see the search of the trunk, especially given the fact that both were with Deputy Waggoner who admitted to being unable to see the bags in the trunk.

[14] Because we affirm the district court on this basis, we need not address Defendants' alternative argument that the prolonged detention of Defendants was unconstitutional.

No. 13-30545

## CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's grant of Gonzalez and Meraz-Garcia's motions to suppress.