# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-30307

United States Court of Appeals
Fifth Circuit

**FILED**
May 24, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

AKARI WILLIAMS,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CR-153-1

Before WIENER, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:*

Akari Williams was convicted by a jury of conspiracy to "distribute and possess with the intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine" and of "knowingly and intentionally possess[ing] with the intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine." Williams was sentenced to 188 months imprisonment on each count, to be served

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30307

concurrently, followed by 5 years of supervised release. Although Williams's codefendants were ultimately acquitted based on the district court's post-trial reconsideration and granting of their earlier, timely pretrial motion to suppress the search of a methamphetamine package and its fruits, the district court determined that Williams failed to timely submit his motion to suppress and overruled his motion to join his codefendants' motion. The district court further determined that, on the merits of the motion, Williams lacked Fourth Amendment standing to assert a right to privacy in the package. Williams appeals, arguing that there was insufficient evidence to convict him and that the district court erred by denying his motion to suppress and allowing introduction of evidence that Williams was involved in orchestrating the shipment of other packages from California to Houma, which Williams claims was inadmissible. We AFFIRM.

**I**

In May 2014, the owner of a UPS store in Riverside, California opened a package she believed to be suspicious and likely a drug package. She later testified that she reported approximately one suspicious package to law enforcement per month, and would receive a reward of $50 per package. She also testified that she would often open such packages herself. The store owner believed the instant package was suspicious because it was overly taped and was expensive to ship. The store owner cut the package open, noticed a chemical odor, and called the San Bernardino County Sheriff's Department.

A deputy sheriff responded to the call. After obtaining a warrant, the deputy opened the package and found paint cans wrapped in cellophane that contained more than three pounds of methamphetamine. Because the package was destined for Houma, Louisiana, the Deputy contacted local law enforcement in the area. They agreed that the package should be shipped to Louisiana.

2

No. 18-30307

When the package arrived in Houma, deputies executed a controlled delivery to the address listed on the package. Officers placed a microphone and iPhone inside the package. Those items would alert them when the package was opened and would capture images of whoever opened it. The package, addressed to John Lirette, was delivered to his address by an undercover agent, where it was accepted by an individual the agents identified as Kerry John Lirette. Lirette got in his car with the package and drove to a house less than a quarter of a mile away. Inside that house, Williams and Lirette opened the box a few moments later, triggering the alert to law enforcement. Williams's cousin, who was in the house at the time, testified that Lirette walked into the house with the package and into a room with Williams separate from other rooms in the house. After opening the package, Williams and Lirette went toward the bathroom while Williams said "Man, flush it. Flush it," and Lirette responded that he could not open the paint can in which the drugs were stored. A SWAT team then moved in and detained everyone inside the home, including Lirette and Williams, and recovered the drugs law enforcement had delivered as well as several weapons and cash.

During the raid, law enforcement also seized Williams's cell phone. After obtaining a warrant, law enforcement searched the cell phone and found text messages between Williams's phone and the phone number listed on the shipping label of the package. These text messages included the tracking number and payment information for the methamphetamine package law enforcement had just delivered. The other phone number in this exchange belonged to Philips Thompson, who police intercepted when he landed at the New Orleans airport on his return from Los Angeles. After obtaining a warrant to search Thompson's cell phone, police found tracking numbers for other packages.

3

No. 18-30307

Williams was charged by superseding indictment, along with codefendants Lirette and Thompson, on methamphetamine distribution charges. Williams was charged on Counts One and Three. Count One alleged a conspiracy, beginning prior to May 1, 2013, to "distribute and possess with the intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine" in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 21 U.S.C. § 846. Count Three alleged that "[o]n or about May 30, 2014 . . . Williams . . . did knowingly and intentionally possess with the intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine," in violation of § 841.

Thompson, Williams's codefendant, moved to suppress the evidence stemming from the search of the May 2014 methamphetamine package. Lirette adopted the motion, but Williams failed to do so. The district court denied the motion to suppress, ultimately concluding that the UPS store owner was not acting as an agent of the government at the time of the search, and therefore no Fourth Amendment protections attached. The district court later granted a request from Lirette to sever his trial from Thompson's and Williams's.

Thompson and Williams proceeded to a four-day jury trial in November 2016. After the Government concluded its case in chief, Thompson reurged his earlier pretrial motion to suppress and also moved for judgment of acquittal. As to the motion to suppress, Thompson argued that "some very significant additional facts have come to the floor in this trial"; namely, the UPS store owner's testimony regarding her practice of opening packages she found suspicious, which she would report to law enforcement and for which she received rewards. Williams's trial counsel also orally moved for a judgment of acquittal and stated that "[w]e adopt[] and join in the motions as well." The district court denied these motions from the bench. After deliberation, the jury

4

found both defendants guilty.  Williams then filed a motion for judgment of acquittal and for a new trial, arguing that sufficient evidence to convict was not presented to the jury and that "the evidence presented in this case was unlawfully seized and should have been suppressed prior to trial."  The district court denied the motion.  The court reversed course on its earlier finding that the UPS store owner was not acting as a government agent and that her search of the package did not implicate the Fourth Amendment, explaining that additional evidence at trial called into question the court's earlier denial of the motion.  Based on that information, the court reconsidered its earlier rulings as to the other defendants and granted (1) Thompson's motion to suppress and for a new trial and (2) Lirette's motion to suppress.  However, the court concluded that because Williams failed to move for suppression before trial, and because there was no good cause for his late filing, he was barred from seeking to suppress the evidence at this stage.  The district court also stated that "[e]ven if the [c]ourt were to consider Williams' motion to suppress as timely, . . . Williams does not have Fourth Amendment standing to seek suppression of the evidence resulting from, or as a result of, the search of the package."  The district court concluded that there was sufficient evidence to support the jury's guilty verdict.  Williams timely appealed following sentencing and entry of a final judgment.

Williams raises three issues on appeal.  First, he argues that there was insufficient evidence to convict him of both the conspiracy charge and the possession with intent to distribute charge and that the district court therefore should have granted his motion for judgment of acquittal or new trial.  Second, Williams contends the district court should have granted his motion to suppress.  Third, he argues that the district court should not have allowed testimony regarding what he terms as "other packages" allegedly sent between Thompson and Williams.  We address each of these arguments in turn.

5

No. 18-30307

## II

When, as here, the defendant has moved for a judgment of acquittal, we review a sufficiency-of-the-evidence challenge de novo. *United States v. Gonzalez*, 907 F.3d 869, 873 (5th Cir. 2018). In reviewing for sufficiency, we view "the evidence in the light most favorable to the government to determine whether the government proved all elements of the crimes alleged beyond a reasonable doubt." *United States v. Castaneda-Cantu*, 20 F.3d 1325, 1330 (5th Cir. 1994) (citation omitted). While "a conviction will be affirmed if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" we will not affirm a conviction that is based "on 'mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference.'" *Gonzalez*, 907 F.3d at 873 (citations omitted).

To prove the methamphetamine distribution conspiracy charged in Count One, the Government was required to establish at trial: "(1) the existence of an agreement between two or more persons to possess with intent to distribute [the charged amount], (2) that [Williams] knew of the conspiracy and intended to join it, and (3) that he participated in the conspiracy." *United States v. Mitchell*, 484 F.3d 762, 768–69 (5th Cir. 2007) (citations omitted). This court has noted that "[t]he jury may infer any element of conspiracy from circumstantial evidence." *United States v. Zamora-Salazar*, 860 F.3d 826, 832 (5th Cir. 2017) (cleaned up). Thus, the agreement element "may be inferred from concert of action," the voluntary participation element "from a collocation of circumstances," and the knowledge element "from surrounding circumstances." *Id.* (cleaned up). For Count Three's charge of methamphetamine possession with intent to distribute, the Government had to prove: "(1) knowledge, (2) possession, and (3) intent to distribute the controlled substance." *United States v. Lopez-Monzon*, 850 F.3d 202, 206 (5th

6

No. 18-30307

Cir. 2017) (quotation and citation omitted).  Again, "[t]he necessary knowledge and intent can be proved by circumstantial evidence." *Id.* (cleaned up).

The government elicited extensive testimony from the investigators who had apprehended Williams following the discovery of the May 2014 methamphetamine package.  A cooperating witness present at the house at the time the package was opened testified that Lirette and Williams took the package to a separate room, and that, when they discovered that the package was bugged, Williams instructed Lirette to "flush it."  After searching Williams's house and cell phone, police discovered text messages with Thompson that discussed this methamphetamine shipment as well as several other shipments that, although not shown to contain methamphetamine, were also shipped from California to Houma at the same time that Thompson travelled back and forth between California and Houma.  Further, two of Williams's cousins, each of whom was incarcerated based on separate drug convictions, testified that they obtained methamphetamine from Williams for resale, confirmed that Thompson and Williams worked together to sell methamphetamine, and testified about other instances of Williams awaiting large deliveries of methamphetamine or making large sales of methamphetamine.  Williams's argument that the evidence was insufficient to convict him  fails, as it largely attacks the propriety of reasonable inferences the jury was entitled to make based on its assessment of witness credibility and circumstantial evidence.[1]  *See Chapman*, 851 F.3d at 378 (argument that

---

[1] We also reject Williams's argument that the evidence in this case is in equipoise regarding guilt or innocence, and that this requires reversal.  This court has abandoned the rule requiring reversal in such a situation.  *See United States v. Vargas-Ocampo*, 747 F.3d 299, 302–03 (5th Cir. 2014) (en banc) (abandoning the "equipoise rule" and reiterating that the standard is whether "considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

adverse witnesses testified pursuant to plea agreements was inapposite, as "we accept all credibility determinations by the jury, with few exceptions"); *Zamora-Salazar*, 860 F.3d at 832 (jury may draw inference of agreement from "concert of action").

Given this extensive evidence, the district court did not err in denying Williams's motion for acquittal.

## III

Williams also challenges the district court's denial of his motion to suppress the May 2014 methamphetamine package and the fruits of its search. Williams concedes that his motion to suppress was untimely, but argues that the district court should have considered it anyway. Williams also contends that the district court's alternative holding—that Williams lacked Fourth Amendment standing to challenge the unlawful search of the methamphetamine package—was in error.[2]

## A

Williams's challenge of the district court's refusal to consider his untimely motion to suppress fails. Federal Rule of Criminal Procedure 12(b)(3) requires that motions to suppress "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." FED. R. CRIM. P. 12(b)(3). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the

---

[2] Williams also argues that his trial counsel was ineffective for failing to raise the suppression issue in a timely manner, but we decline to reach this issue on direct appeal. Instead, we apply "[t]he general rule in this circuit . . . that a claim for ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Cantwell*, 470 F.3d 1087, 1091 (5th Cir. 2006) (quoting *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992)).

party shows good cause." FED. R. CRIM. P. 12(c)(3). Although we have not ruled on the standard of review of a district court's finding of lack of good cause under Rule 12(c)(3), we typically review determinations of whether a justification exists to excuse a deadline for abuse of discretion and see no reason to depart from that practice here. *See, e.g., United States v. Mesquiti*, 854 F.3d 267, 275 (5th Cir. 2017) (reviewing district court ruling on motion for continuance for abuse of discretion); *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (same for showing of good cause why service of process was untimely); *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992) (same for determination of timeliness of motion to intervene). Williams has not shown that the district court abused its discretion in determining he lacked good cause for failing to file the motion to suppress before trial, along with the other defendants.

A showing of good cause requires a defendant to show both cause and prejudice. *See Davis v. United States*, 411 U.S. 233, 242–43 (1973) (suggesting predecessor to current rule requires showing of diligence and actual prejudice); *United States v. Fry*, 792 F.3d 884, 888 (8th Cir. 2015) ("Under Rule 12(c)(3), as amended December 1, 2014, a court may consider an issue not timely raised under Rule 12(b)(3) only upon a showing of 'good cause,' which requires a showing of cause and prejudice"). The district court found that "[w]ell before trial, Williams was aware that the package was opened by the UPS store owner, and that the evidence collected during, and as a result of, that search would be used to establish his involvement in the charged conspiracy." The district court also noted that "Williams and his counsel were, or should have been, aware of [codefendants'] suppression motions and the hearing the Court held . . . given the large number of filings related to the motion on the record." For these reasons, the district court determined that "Williams was fully aware

of the facts upon which the suppression motion was based, and . . . he otherwise offers no reason for his untimely filing, there is no 'good cause.'"

Williams argues that the district court erred in finding he lacked good cause because the Government did not object at the time that he attempted to join his codefendants' reurged motion at trial, and because it was unfair for the district court to reconsider his codefendants' motion to suppress without taking up his untimely motion. Despite these arguments, we perceive no abuse of discretion in the district court's determination that Williams knew or should have known of his codefendants' pretrial motion to suppress and was aware early on in the proceedings of the facts underlying the suppression motion. The record indicates that Williams's counsel was served with Thompson's motion to suppress and Lirette's motion to adopt the suppression motion and that the discovery submitted with Thompson's motion reflects that the relevant police reports provided by the Government included references to the UPS store owner's opening of the package before reporting it to law enforcement. Thus, Williams had adequate notice of his codefendants' pretrial motion to suppress and its underlying reasons. Accordingly, we affirm the district court's determination that Williams lacked good cause for his failure to file his motion to suppress prior to trial.

**B**

Even when a motion to suppress is untimely, we have reviewed the merits of a suppression challenge for plain error. *See Vasquez*, 899 F.3d at 373. To establish plain error, Williams "must prove an error that was clear or obvious, rather than subject to reasonable dispute," that the error "affect[ed] his substantial rights," by "affect[ing] the outcome of the district court proceedings." *Id.* (cleaned up). Once these elements are established, we have "discretion to remedy the error," which we ordinarily exercise "only if the error

seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

Here, the Government argues Williams lacks standing. Williams has the burden of demonstrating standing to seek suppression by establishing that he had "'a legitimate expectation of privacy in the invaded place.'" *See United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (quoting *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011)). While "[s]tanding does not require ownership of the invaded area," "a defendant's standing depends on 1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and 2) whether that expectation of privacy is one which society would recognize as objectively reasonable." *Id.* (cleaned up).

The district court concluded that Williams lacked an expectation of privacy in the package containing methamphetamine because he was neither the sender nor addressee of the package, nor was the package addressed to a fictional addressee that served as Williams's alter ego. In reaching the conclusion that Williams therefore lacked an expectation of privacy, the district court relied on statements in our precedent that "[a]rguably, a defendant who is neither the sender nor the addressee of a package has no privacy interest in it," and that "it may well be that even if Pierce claimed that he was the intended recipient of the package, this would not confer a legitimate expectation of privacy," because he was not the addressee of the package. *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992). Accordingly, under our case law, whether a person who is neither the sender nor addressee of a package has a reasonable expectation of privacy in a package is "subject to reasonable dispute," and therefore is not plain or obvious. *See Puckett v. United States*, 556 U.S. 129, 135 (2009).

11

No. 18-30307

## IV

Finally, Williams contends that evidence of "other packages" should not have been submitted to the jury. Williams did not object at trial to the introduction of this evidence, so we review for plain error. *See United States v. Williams*, 620 F.3d 483, 488–89 (5th Cir. 2010) ("[W]here the defendant did not object to the evidence on the basis presented on appeal, we review the district court's evidentiary ruling for plain error."). The evidence at issue consisted of text messages between Thompson's and Williams's cell phones, in which the two exchanged addresses and tracking numbers for packages sent from California to Houma at the same time that Thompson flew back and forth between California and Louisiana. The shipments at issue occurred in December 2013, January 2014, and February 2014. The Government contends this evidence was intrinsic to the conspiracy and therefore not subject to Federal Rule of Evidence 404(b) restrictions and, alternatively, survives scrutiny under Rule 404(b).

"Rule 404(b) is not implicated if the . . . evidence was intrinsic to the acts for which [Williams] was charged." *United States v. Stephens*, 571 F.3d 401, 410 (5th Cir. 2009). Evidence is intrinsic "when the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009) (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)). "And, plainly, acts committed in furtherance of the charged conspiracy are themselves part of the act charged and therefore qualify as intrinsic evidence." *United States v. Ceballos*, 789 F.3d 607, 621 (5th Cir. 2015) (cleaned up). When, on the other hand, evidence is extrinsic to the charged offense, this court applies "the two-step test outlined in *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)." *United States v.*

No. 18-30307

*Stephens*, 571 F.3d 401, 410–11 (5th Cir. 2009). First, the court asks whether "the extrinsic offense evidence is relevant to an issue other than the defendant's character," and second, whether it "possess[es] probative value that is not substantially outweighed by its undue prejudice" or any other part of Rule 403. *Id.* (cleaned up).

The evidence of other acts that Williams challenges might reasonably fit within either category. Even assuming the evidence is extrinsic, as Williams contends, the district court's decision to admit the other acts under Rule 404(b) was not plain error, as the evidence was clearly relevant to Williams's intent and knowledge, and to demonstrating how the conspiracy worked. *See Ceballos*, 789 F.3d at 621 (no plain error where extrinsic evidence "at least arguably serv[ed] a permissible evidentiary purpose under Rule 404(b)"). Moreover, the district court instructed the jury on the limitations of Rule 404(b) evidence and instructed them that "[t]he defendants are not on trial for any act, conduct, or offense not alleged in the indictment." *See United States v. Waldrip*, 981 F.2d 799, 805 (5th Cir. 1993) (examining district court's failure to sua sponte provide a limiting instruction with respect to specific extrinsic evidence for plain error and finding that "although we cannot fairly say that the evidence of prior conduct was not damaging, it was not so damaging as to require us to reverse on the basis of plain error"). Because the district court instructed the jury that Williams was only on trial for "act[s], conduct, or offense[s]" alleged in the indictment and instructed as to the limited use of evidence regarding acts "similar to those charged in the indictment, but which were committed on other occasions," any error by the district court in admitting evidence of other acts was not plain or obvious. *See Puckett*, 556 U.S. at 135; *Waldrip*, 981 F.2d at 805–06.

**\*\*\***

For these reasons, the judgment of the district court is AFFIRMED.

13